CALIFORNIA CNG, INC., a California Corporation; California CNG, a California General Partnership; Prime of California, Inc., a California Corporation, Plaintiffs–Appellants,

v.

SOUTHERN CALIFORNIA GAS COMPANY, a California Corporation; Henderson Engineering Company, Inc., an Illinois Corporation, Defendants–Appellees.

No. 00–55987.

D.C. No. CV 95–00281–JSL.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 2001.

Decided Aug. 9, 2001.

Before HUG, TROTT, and W. FLETCHER, Circuit Judges.

MEMORANDUM *

We affirm the district court's grant of summary judgment to defendants Southern California Gas Company ("SoCalGas") and Henderson Engineering Company, Inc. ("Henderson"). Because the parties are familiar with the facts and prior proceedings, we do not restate them unless necessary.

I

█ The district court granted summary judgment to SoCalGas on the ground that plaintiffs California CNG, Inc., California CNG, and Prime of California, Inc. (collectively, "CalCNG") failed to demonstrate that the alleged anticompetitive practices of SoCalGas were a material cause of CalCNG's economic misfortunes in the market for natural gas vehicle fueling stations.

Plaintiffs bore the burden of proving that the harm they suffered was "by reason of" defendant's illegal activity. 15 U.S.C. § 15(a). According to the Supreme Court,

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

[plaintiff's] burden of proving the fact of damage under § 4 of the Clayton Act is satisfied by its proof of *some* damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage. It is enough that the illegality is shown to be a material cause of the injury; a plaintiff need not exhaust all possible alternative sources of injury in fulfilling his burden of proving compensable injury under § 4.

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n. 9, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (emphasis in original). In brief, the anticompetitive activity of the defendant need not be the only cause of plaintiff's injury, but it must be a material cause. *See Dolphin Tours, Inc. v. Pacifico Creative Service, Inc.*, 773 F.2d 1506, 1509 (9th Cir.1985) (plaintiff "must demonstrate that the anticompetitive activity was a material cause of its injury") (quotation marks omitted); 2 Phillip E. Areeda *Antitrust Law*, ¶ 338a, at 318 (2nd ed.2000) (once a defendant introduces evidence that other factors caused the harm to the plaintiffs, "the burden remains on the plaintiff to persuade the jury that the antitrust violation was a material cause" of the harm). The fact that the cause must be *material* requires that the finding of harm be to some degree significant.

CalCNG has not met its burden of proof in this case. Specifically, plaintiffs have not produced evidence that would support the inference that they could have made sales in the market but for the anticompetitive activity of SoCalGas. Rather, the record demonstrates that CalCNG was at no point a viable competitor in the market. Plaintiffs failed to make a single sale during the relevant time period. During this same time period, other participants in the market made sales. More important, plaintiffs only made contact with a handful of potential purchasers and did not show

that a single purchaser gave serious consideration to their offer. Further, Prime was in desperate financial condition, and had a negative net worth by early 1993. In spite of this fact, and in spite of the fact that their business plan stated that entering the market would require a substantial capital infusion, plaintiffs made minimal investments in their business.

Plaintiffs contend that they had substantial experience in the industry; that they had exclusive rights to market the Pignone compressor; and that a report from Price Waterhouse projected success for their operations. These things do not demonstrate error by the district court. First, although Prime had been in business for thirty years, that experience was in the liquid fuel business, and the two main persons involved in CalCNG were relatively new to the fuel business. Second, the right to distribute the Pignone compressor does not establish that plaintiffs could have succeeded in the market. Although it had a worldwide market share of 20%, the Pignone compressor never achieved more than a 2% market share in the United States. Finally, in compiling its report, Price Waterhouse largely took figures provided by Pignone and CalCNG and plugged these figures into their calculations as assumptions. We agree with the district court's statement that the report's "crucial underlying assumptions are speculative, unsubstantiated, and in many instances directly contrary to the uncontroverted facts in the record."

In sum, we conclude that the district court did not err in granting summary judgment to SoCalGas on the ground that plaintiffs had no hope of establishing that SoCalGas' practices, rather than the plaintiffs' own infirmities, were a material cause of their failure in the market.

## II

■ CalCNG argues that SoCalGas and Henderson conspired to terminate CalCNG's agreement with Henderson under which CalCNG served as the exclusive distributor of the Pignone compressor. "To survive a motion for summary judgment .... [respondents] must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed respondents." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The district court did not err in concluding that the inference of conspiracy was not reasonable in light of the business reasons for Henderson's termination of the distributorship agreement. According to the agreement, Henderson could terminate the agreement if CalCNG failed to make a sale during the first year or, in the alternative, paid $50,000 to Henderson. One year passed, CalCNG did not make a sale, and CalCNG did not pay Henderson $50,000. CalCNG has not brought forward evidence sufficient to create a genuine issue of material fact that the reason for terminating the agreement was because of a conspiracy rather than that CalCNG had not held up its end of the bargain.

## III

We now address the district court's dismissal of CalCNG's common law tort claims.

### A. Breach of contract

■ The district court did not err in dismissing the breach of contract claim. There being no breach of the contract, as described in Part II above, there can be no claim for inducing breach. CalCNG argues that it should not have been bound by the label in its pleadings and that the district court erred in not considering its claim as a claim for tortious interference with contract. We disagree, and hold that the district court did not abuse its discretion in refusing to accept CalCNG's request to change the legal theory of its claim. *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir.1980).

### B. Fraud and negligent misrepresentation

■ Plaintiffs claim that they entered the NGV fuel station market in reliance on representations from SoCalGas that SoCalGas would compete in a fair way and that their rate structure would allow competition. The district court did not err in dismissing this claim. Even it were true that SoCalGas did not compete fairly and that their rate structure stifled competition, the record simply does not show that the plaintiffs placed such reliance on SoCalGas' supposed good faith and honest promises.

AFFIRMED.